UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JEREMIAH PATRICK,               )
                                )
                  Plaintiff     )
                                )
       vs.                      )       CAUSE NO. 3:14-CV-782 RLM
                                )
OSCAR COWEN, JR., individually and )
as Sheriff of Starke County, Indiana; )
STARKE COUNTY SHERIFF'S         )
DEPARTMENT; and STARKE COUNTY )
SHERIFF'S MERIT BOARD,          )
                                )
                  Defendants    )

OPINION and ORDER

A hearing was held on March 2, 2016 on the defendants' motion for summary judgment on the claims of Jeremiah Patrick's second amended complaint. As presented, the parties' arguments overlap considerably; the court has attempted to unravel the arguments, which must be addressed under different tests. Jeremiah Patrick claims the defendants violated his rights under the Constitution, the Family Medical Leave Act, and Indiana law when they deemed him to have resigned when he didn't come back to work after his FMLA leave expired and didn't comply with state law requiring notice and an opportunity to be heard. The court grants the defendants' motion in part and denies in part: the FMLA claims will move forward, but the other claims will not.

***Background***

The following facts are not in dispute.

Jeremiah Patrick joined the Starke County Sheriff's Department in December 2011 and was a deputy patrolman on March 28, 2013 when Sheriff Oscar Cowen reassigned him to a position at the Starke County jail. Mr. Patrick refused to accept the jail assignment, told the Sheriff he was going home sick, and left work. Based on that incident, Sheriff Cowen suspended Mr. Patrick for eight days for disobeying a direct order. The remaining dates were in 2013 until otherwise noted.

On March 28, Mr. Patrick faxed a note from IU Health System Urgent Care to the Sheriff's Department that read, "Please excuse Jeremiah from work/school for the following dates:  3/28 – 4/8/13. Patient may return to work/school on 4/9/13." Those dates – March 28 to April 8 – coincide with the dates of Mr. Patrick's suspension.

On April 18, Mr. Patrick faxed another note from IU Health System, signed/stamped by Byron M. Holm, M.D. stating that "Jeremiah Patrick was seen at IU Primary Care today. Please excuse patient from work for the next two weeks while under medical treatment."

On May 16, Mr. Patrick submitted paperwork to the Starke County Auditor's Office seeking time off under the Family Medical Leave Act. Byron Holm, M.D. of IU Health LaPorte Physicians signed that form. On the form, Dr. Holm indicated that Mr. Patrick's serious medical condition commenced on April 18, 2013 and could be expected to last for weeks.

On July 1, Mr. Patrick provided a doctor's note to the Sheriff's Department from IU Health LaPorte Physicians, dated June 27, stating that "Jeremiah Patrick is unable to return to work until July 29."

On July 2, Sheriff Cowen wrote to Mr. Patrick telling him that Sheriff's Department records showed that his twelve weeks of FMLA leave would expire on July 5; Sheriff Cowen added that Mr. Patrick should report any disagreement he might have.

Mr. Patrick disagreed. On July 3, he presented a letter to the Sheriff indicating that he thought the last day of his FMLA leave was July 11 and added: "However, as you are aware by the doctors note I sent your office on 7/1/13, I am not able to return to work until 7/29/13." Later the same day, Mr. Patrick submitted a second letter to Sheriff Cowen stating that because his FMLA paperwork had been submitted on May 16, his twelve-week FMLA leave should end on August 8, not July 5 as the Sheriff had suggested. Mr. Patrick indicated he wouldn't be returning to work until July 29, a date before the end of the twelve-week period as he counted it.

On July 16, Sheriff Cowen wrote to Mr. Patrick informing him that because his FMLA leave had expired and he hadn't contacted the Sheriff's Department during his time off, his position had been reassigned to another officer and he was no longer employed with the Starke County Sheriff's Department. The same day, Mr. Patrick wrote to the Starke County Merit Board requesting a hearing with the

Board and the Sheriff "pursuant to Indiana Code" to discuss Sheriff Cowen's July 16 letter. Pltf. Exh. 16.

Some time later in July (the letter isn't dated), Mr. Patrick wrote to Sheriff Cowen indicating that he had asked the Merit Board for a hearing about the loss of his job, but no hearing had, as yet, been set. Mr. Patrick added:

> Please accept this letter as notice that I am currently attempting to contact my doctor to receive clearance to return to full-active duty. At all times it has been my full intention to return to duty for the Starke County Sheriff's Department; however, as you know, my doctor currently has not released me to full-active duty until July 29, 2013, even though it appears that my FMLA time may have expired on July 11, 2013. Providing information from my doctor indicating that I could not return to duty until July 29, 2013 was my attempt to provide notice to the department that I would need additional time beyond that provided by the FMLA before returning to duty. It is my hope to return to duty as a Starke County Sheriff's Deputy as soon as my doctor releases me to duty which I am confident will be prior to July 29th.

On January 30, 2014, Mr. Patrick filed a petition for reinstatement with the Merit Board claiming that he had been illegally terminated because the Sheriff didn't have the authority to unilaterally terminate his employment. On February 20, Mr. Patrick supplemented his reinstatement petition with a request for back pay; the Merit Board scheduled a hearing on the petition for March 11. Mr. Patrick says that before the March 11 hearing his attorney spoke with Merit Board president Ed Troike, who told his counsel that the Merit Board wouldn't be granting Mr. Patrick's petition for reinstatement or his request for back pay "regardless of arguments to be made . . . or evidence to be presented" at the hearing.

4

On March 10, Mr. Patrick withdrew his petition for reinstatement and back pay. In support, Mr. Patrick said that in light of his attorney's conversation with Mr. Troike, a hearing would be futile, so Mr. Patrick asked that the March 11 hearing be canceled.

Mr. Patrick filed suit in this court on April 8, 2014. The claims of his second amended complaint under 42 U.S.C. § 1983, filed March 27, 2015, are that the defendants violated his procedural and substantive due process rights in violation of the Fourteenth Amendment to the United States Constitution by terminating his employment without filing formal disciplinary charges, giving him notice of disciplinary charges, or conducting a disciplinary hearing (Count I). Mr. Patrick also claims the defendants violated his procedural and substantive due process rights by not conducting "the removal and appeals process proscribed by Indiana Code § 36-8-10 et seq." (Count II); violated Indiana law by breaching the parties' contract (Count III); and violated the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. (Count IV). He seeks reinstatement to his earlier position, lost wages and benefits, compensatory damages, punitive damages from defendant Oscar Cowen in his individual capacity, fees, and costs.

The defendants have moved for summary judgment based their arguments that

> (1) Mr. Patrick can't recover on his federal due process claim
> because (a) he effectively resigned from his position with the Sheriff's
> Department when he failed to return to work after his FMLA leave

5

ended and was therefore not entitled to a Merit Board hearing, and/or (b) he was afforded appropriate due process that he didn't take advantage of, and/or (c) if he was terminated, the defendants are entitled to qualified immunity for relying on the advice of counsel that the discharge of an employee for failing to report to work after FMLA leave wasn't an issue for the Merit Board to decide;

(2) Mr. Patrick isn't entitled to recover on his state law due process claim under Indiana Code § 36-8-10-11 because he effectively resigned from his position so no procedures were due him, and/or he didn't take advantage of available remedies under the statute, and/or his claim is duplicative of his breach of contract claim;

(3) Mr. Patrick's breach of contract claim fails because deputies don't have contracts with the Sheriff's Department, and/or the defendants didn't breach any alleged contract, and/or Mr. Patrick didn't suffer any damages as a result of any breach; and

(4) Mr. Patrick can't prevail on his claim that his termination violated FMLA – his FMLA leave ended before his separation from employment with the Sheriff's Department, so there was no statutory violation.

### *Standard of Review*

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, 477 U.S. at 255; Weigle v. SPX Corp., 729 F.3d 724, 730 (7th Cir. 2013). The existence of an alleged factual dispute, by itself, won't defeat a summary judgment motion; "instead, the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see also* Fed. R. Civ. P. 56(e)(2). "[S]ummary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Steen v. Myers, 486 F.3d 1017, 1022 (7th Cir. 2007) *(quoting* Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005)).

### *Official Capacity Claims*

Mr. Patrick has named Oscar Cowen, Jr. as a defendant "individually and in his official capacity" as Sheriff of Starke County, Indiana. Naming Sheriff Cowen in his official capacity is the same as suing the Sheriff's Department itself and the Starke County Sheriff's Department is already a named defendant in this action, so the official capacity claims against Sheriff Cowen will be dismissed. *See* Burton v. Lacy, No. 1:07-CV-918, 2008 WL 187552, at *5 (S.D. Ind. Jan. 18, 2008) ("[N]aming the Sheriff in his official capacity is the same thing as bringing a suit against the Sheriff's Department."); Hebert v. Porter County, Ind., No. 2:07-CV-91, 2007 WL 2363835, at *3 (N.D. Ind. Aug. 14, 2007) ("Hebert has also named former Sheriff David Reynolds in his official capacity, which is equivalent to suing the Sheriff's Department itself.").

### *FMLA Violation*

Mr. Patrick claims in Count 4 that the defendants violated the Family and Medical Leave Act when they wrongfully terminated his employment before his FMLA leave expired, an action he claims was retaliatory in nature. He also says he was prejudiced by the defendants' failure to provide him with the proper FMLA notices and communicate with him about, and during, his leave.

The defendants haven't shown themselves to be entitled to judgment as a matter of law on this claim.

The Family Medical Leave Act allows an eligible employee with a serious health condition that renders him unable to perform his position to take twelve workweeks of leave during each twelve-month period. 29 U.S.C. § 2612(a)(1)(D). An employer can't "interfere with, restrain, or deny the exercise of or the attempt to exercise" any right under the Act, 29 U.S.C. § 2615(a)(1), and an employee on leave is entitled to be restored to the same position or a position equivalent to the one he had before he took qualifying leave. 29 U.S.C. § 2614(a)(1)-(2). Employers who violate the statute are liable to the injured employee for compensatory damages, back pay, and equitable relief. 29 U.S.C. § 2617(a).

The parties' arguments about Mr. Patrick's FMLA claims are based on their agreement that Mr. Patrick was an eligible employee, 29 U.S.C. § 2611(2)(A), the Starke County Sheriff's Department was his employer,[1] 29 U.S.C. § 2611(4), and he had a serious medical condition,[2] 29 U.S.C. § 2611(11). The defendants haven't challenged Mr. Patrick's claim that he didn't receive any of the notices required by FMLA.

*Submission of FMLA application*

---

[1] *Contra* Indiana Code § 36-8-10-4(a) ("A county police force is established in each county. The members are employees of the county . . . ."); Bartholomew County v. Review Bd. of Indiana Dept. of Workforce Dev., 14 N.E.3d 806, 809 (Ind. Ct. App. 2014) (recognizing that as a merit deputy, claimant was "employed by the county" and his discharge was "from county employment"); Starke County Sheriff's Department Merit Board Rules and Regulations Preamble & Section II, Rule 2-1(C) ("Merit officers are employees of Starke County . . . .").

[2] The statute defines "serious medical condition" as "an illness, injury, impairment, or physical or mental condition that involves (a) inpatient care in a hospital, hospice, or residential medical care facility; or (b) continuing treatment by a health care provider." 29 U.S.C. 2611(11).

Mr. Patrick first says a material issue of fact exists as to whether the Sheriff's Department told him to submit his FMLA paperwork to the auditor's office or whether he just submitted the paperwork to the wrong entity. Regardless of who Mr. Patrick spoke to about where to file his paperwork, the Sheriff's Department Merit Board Rules and Regulations, which the parties agree apply, contain the following provisions:

7-2     General Personnel Policies of Starke County

A.     The stated policies and procedures of the Starke County Employee Handbook shall govern in all instances involving merit employees when there is no specific statement to the contrary contained in these Merit Rules.

*     *     *

C.     **The Starke County Employee Handbook contains specific reference to the Family/Medical Leave of Absence (FMLOA) as well as other policies concerning health benefits**, Health Insurance Portability and Accountability Act of 1996 (HIPAA); Cobra Act of 1986; **leaves of absence**; worker's compensation benefits, **and other important personnel matters which are applicable to both merit and non-merit employees of the Starke County Sheriff's Department.** Each employee (merit or non-merit) is required to familiarize themselves with the provisions of the Starke County Employee Handbook which contains a statement of supplemental benefits not addressed in the Merit Board Rules and Regulations.

(Emphasis added). Mr. Patrick says the Starke County Employee Handbook doesn't apply to him, but the Sheriff's Department Merit Board Rules and Regulations direct Sheriff's Department officers to the Starke County Employee Handbook for information about a FMLA leave of absence. Mr. Patrick hasn't alleged or argued that the rules and handbook weren't available to him.

Mr. Patrick submitted his FMLA application to the Starke County Auditor's Office, which might or might not have been the proper department to receive that paperwork. In any event, Mr. Patrick's request for FMLA leave was approved, so the question of whether he submitted his paperwork to the correct or incorrect Starke County department doesn't create an issue of material fact.

*Loss of employment as a violation of FMLA*

Mr. Patrick alleges in Count 4 that the defendants wrongfully terminated his employment before his FMLA leave expired, and that that action was retaliatory in nature, a substantial factor in the decision to terminate him from employment, and a violation of the FMLA. Mr. Patrick hasn't referenced any applicable statutory section(s), but his claims fall under 29 U.S.C. § 2615, entitled "Prohibited Acts." That section provides that

> (a)(1) It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
> (a)(2) It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

29 U.S.C. §§ 2615(a)(1)-(2).

Because employers are prohibited from both interfering with [§ 2615(a)(1)] and retaliating against [§ 2615(a)(2)] an employee's use or attempted use of FMLA leave, "[a] claim under FMLA for wrongful termination can be brought under either a discrimination/retaliation or [an] interference/entitlement theory." Kauffman v. Federal Exp. Corp., 426 F.3d 880, 884 (7th Cir. 2005); *see also* Burnett v. LFW

Inc., 472 F.3d 471, 477 (7th Cir. 2006) (FMLA "contemplates [] interference and retaliation theories of recovery"). "The difference between the two theories is that a retaliation claim requires the employee to prove discriminatory or retaliatory intent while an interference claim only requires the employee to prove that the employer denied him entitlements provided by the Act." Pagel v. TIN, Inc., 695 F.3d 622, 626 (7th Cir. 2012).

*Liability of the Defendants*

The provisions of 29 U.S.C. §§ 2615(a)(1) and (a)(2) prohibit certain acts by an employer. The parties agree that the Sheriff's Department was Mr. Patrick's employer. But Mr. Patrick has set forth no allegations about the status of Sheriff Cowen or the Starke County Sheriff's Merit Board, or the basis for their liability, under the statute. Mr. Patrick also alleges in his FMLA claim that "the defendants" terminated his employment in violation of the statute, and the actions of "the defendants" were retaliatory in nature, but he doesn't identify which defendant(s) took what action(s).

"When determining liability under [29 U.S.C. §§ 2615(a)(1) and (a)(2)], courts often face the question of who is considered an employer for purposes of the statute and, specifically, whether an individual can be held liable under the FMLA." Austin v. Cook County, No. 07 C 3184, 2009 WL 799488, at *3 (N.D. Ill. Mar. 25, 2009). Mr. Patrick and the defendants have agreed that the Starke County Sheriff's Department was Mr. Patrick's employer. The Starke County Sheriff's Merit Board might be an employer, too, but Mr. Patrick hasn't alleged

12

that the Merit Board was his employer or that the Merit Board took any of the actions alleged in his FMLA claim, nor has he set forth any theory that would make the Merit Board liable to him under FMLA. Because nothing in the record would support a finding that the Starke County Sheriff's Merit Board was Mr. Patrick's employer or that the Board took the actions complained of in his FMLA claim, the claims of Count 4 of the second amended complaint must be dismissed as to the Starke County Sheriff's Merit Board.

Mr. Patrick's arguments in his response brief and at the summary judgment hearing confirm that the actions he says violated his FMLA rights – insufficient FMLA notice and termination of employment before the end of his FMLA leave – were actions taken in whole or in part by Sheriff Cowen. "Although the issue of individual liability under the FMLA has not yet been directly addressed by the United States Supreme Court or the Seventh Circuit, courts in this district generally agree that individuals can be held liable under the FMLA. The primary rationale for this holding has been that the FMLA tracks word for word the definition of employer used in the Fair Labor Standards Act, 29 U.S.C. § 203(d), which does subject individuals to liability. A plaintiff may assert FMLA claims against an individual who had supervisory authority over the plaintiff, and is at least partly responsible for the alleged violation." Baier v. Rohr-Mont Motors, Inc., No. 12-cv-8234, 2014 WL 6434584, at *8 (N.D. Ill. Nov. 17, 2014) (internal quotations and citations omitted); *see also* Ruckebeil v. Cancer Treatment Centers of America, Inc., No. 15 C 8259, 2016 WL 878585, at *2 (N.D. Ill. Mar. 8, 2016)

("An individual may be liable under the FMLA if she had supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation.") (internal quotation and citation omitted); Shockley v. Stericycle, Inc., No. 13-cv-1711, 2013 WL 5325632, at *4 (N.D. Ill. Sept. 19, 2013) ("Plaintiff alleges Rizzo was the director of the department in which [plaintiff] worked, likewise supporting a reasonable inference of Rizzo's authority over plaintiff."); Austin v. Cook County, No. 97 C 3184, 2009 WL 799488, at *3 (N.D. Ill. Mar. 25, 2009) (individual could be held liable under FMLA based on plaintiff's allegation that the individual "himself suspended and discharged Austin from his employment with the county and that the actions were the result of Austin exercising his rights under the FMLA"). Even if a defendant doesn't exercise exclusive control over all the day-to-day operations of the employer, as long as he possesses control over the aspect of employment alleged to have been violated, the FMLA will apply to that individual. *See* 29 U.S.C. § 2611(4)(A)(ii)(I) (defining "employer" as including "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer").

While the parties haven't raised the issue of whether Sheriff Cowen could qualify as an employer under FMLA, as Sheriff of Starke County, Oscar Cowen controlled, in whole or in part, the terms of Mr. Patrick's employment as a merit deputy and Mr. Patrick's ability to exercise his FMLA rights. *See* Vandewalle v. Moffa, No. 3:07-CV-400, 2009 WL 631244, at *3 (N.D. Ind. Mar. 10, 2009) ("Although officers employed by the sheriff's department are employed by the

14

county, they operate under the control of the county sheriff."); IND. CODE § 36-8-10-4(a) ("A county police force is established in each county. The members are employees of the county, and the sheriff of the county shall assign their duties according to law."). The court will treat Mr. Patrick's FMLA claims as applicable to Sheriff Cowen individually. *See* Gable v. Mack Trucks, Inc., No. 13 C 5349, 2015 WL 9582984, at *5 n.1 (N.D. Ill. Dec. 30, 2015) ("[Supervisor's] role in administering [employer's] attendance policy shows that he was 'at least partly responsible' for [plaintiff's] termination and can be sued individually for his actions.").

Mr. Patrick's claims for wrongful termination and lack of notice in violation of FMLA against the Starke County Sheriff's Department and Sheriff Oscar Cowen, individually, will be considered under a retaliation theory and an interference theory.

*Retaliation Claim*

The central issue in a FMLA retaliation claim is "whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason. . . . [T]he employer's motive is relevant because retaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights." Seeger v. Cincinnati Bell Telephone Co., LLC, 681 F.3d 274, 282 (6th Cir. 2012) (emphasis in original; internal quotes and citation omitted).

The single sentence setting forth Mr. Patrick's retaliation claim is found in paragraph 34 of his second amended complaint. To prevail, Mr. Patrick may proceed under the "direct method" of proof by "proffering evidence of a retaliatory motive" or under the "indirect method" of proof by "comparing [his] treatment to that of a similarly situated employee." Lewis v. School Dist. # 70, 523 F.3d 730, 741 (7th Cir. 2008). However, the defendants haven't moved for summary judgment on the issue of retaliation in violation of FMLA, so this claim remains for trial. The summary judgment record wouldn't support a finding of retaliation – a FMLA retaliation claim requires an intent to retaliate for conduct protected by the FMLA, not just because of bad feelings – but Mr. Patrick isn't required to come forth with evidence on a claim as to which summary judgment wasn't sought.

*Interference Claim*

The issue in an interference claim under the FMLA is whether the employer denied an employee benefits to which the employee was entitled under the statute; unlike a retaliation claim, an employer's intent isn't relevant in determining whether actionable inference occurred. Scruggs v. Carrier Corp., 688 F.3d 821, 825 (7th Cir. 2012) ("An interference claim does not require an employee to prove discriminatory intent on the part of the employer."). Although summary judgment isn't being sought on the specific issue of "interference," viewing the facts in the light most favorable to Mr. Patrick, as the court must do at this stage of the proceedings, his claims relating to his ultimate removal from the county payroll are consistent with a FMLA interference claim.

To succeed on an interference claim, Mr. Patrick must show that (1) he was eligible for FMLA protections; (2) his employer was covered by the statute; (3) he was entitled to take leave; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him FMLA benefits to which he was entitled. James v. Hyatt Regency Chicago, 707 F.3d 775, 780 (7th Cir. 2013). Our focus is on the fifth element – the parties have agreed to the first three elements, and the approval of Mr. Patrick's FMLA leave request establishes that the fourth element isn't in dispute – leaving Mr. Patrick's burden of establishing that Sheriff Cowen and/or the Starke County Sheriff's Department denied him the FMLA benefits to which he was entitled.

Mr. Patrick argues that the defendants interfered with his FMLA leave by failing to provide him with proper notice of the duration of his leave and by terminating his employment before the end of his leave.

*Duration of FMLA leave*

The parties dispute the effective dates of Mr. Patrick's FMLA leave. The defendants say his leave began on April 18 and ended on July 11; Mr. Patrick agreed with those dates at first, but now says the correct dates are May 16 to August 8.

The defendants base their position on the information contained in Mr. Patrick's FMLA application. The form was signed by Byron Holm, M.D. and dated May 16. Dr. Holm (1) reported the commencement date of Mr. Patrick's medical condition as April 18; (2) estimated the probable duration of Mr. Patrick's

condition as "weeks;" (3) indicated that he began treating Mr. Patrick for his condition on April 18; (4) responded "yes" to the question of whether Mr. Patrick would be "incapacitated for a single continuous period of time due to his or her medical condition, including any time for treatment and recovery;" and (5) estimated the beginning and ending dates for Mr. Patrick's period of incapacity as "4/18/13 – unknown." According to the defendants, the April 18 date controls – that is the date Mr. Patrick's doctor reported as the beginning of his serious medical condition – not May 16 when Mr. Patrick dropped off his paperwork at the auditor's office.

The defendants insist the decision in <u>Sewall v. Chicago Transit Authority</u>, No. 99 C 8372, 2001 WL 40802 (N.D. Ill. Jan. 16, 2001), supports their reliance on the April 18 date. Mr. Sewall, an employee of the CTA, filed a FMLA form with his employer on December 16, 1998 identifying November 3, 1998 as the date he became unfit to work based on his serious medical condition. The CTA denied his request for leave, concluding that he hadn't been employed long enough to qualify as an eligible employee at the time his leave commenced on November 3; when Mr. Sewall didn't return to work, the CTA hired someone else for his position. Mr. Sewall filed suit based on his claim that the CTA had improperly "backdated" his FMLA request – he says he submitted his FMLA application on December 16, so December 16 was the proper start date for his FMLA leave, and on December 16 he was a qualified employee entitled to FMLA leave.

The Sewall court concluded that the CTA hadn't backdated the FMLA request: "the date in which Sewall's leave would have commenced, if Sewall was an eligible employee, would have been November 3rd. An employee is entitled to FMLA leave at the onset of a 'serious medical condition.' . . . In this case that serious health condition was Sewall's illness that caused him to be unfit to work, and caused him to miss work from November 3 [1998] until February 6, 1999. There is absolutely no law supporting a finding that Sewall's leave should have begun, almost a full month after November 3rd, on December 2nd when [a CTA employee] handed Sewall the FMLA application or on December 16th when Sewall actually completed the FMLA application, six weeks into his sick leave." 2001 WL 40802, at *5. The court found that Mr. Sewall "stated in his FMLA application, dated December 16, 1998, that November 3, 1998 was the date in which the condition that made him unfit to work commenced," and no evidence in the record supported any other date for his potential FMLA leave to begin. 2001 WL 40802, at *6.

The defendants maintain that Sewall court's reasoning applies in this case: Mr. Patrick's FMLA application reported that his serious medical condition began on April 18, not on May 16, a month into his sick leave when he submitted his paperwork.

Mr. Patrick claims that because he submitted the FMLA application to the Starke County Auditor on May 16, that date – May 16 – is the proper beginning of his twelve weeks of leave. He claims it wasn't fair for Starke County to

"backdate" his leave date without telling him they were doing it, and he suffered prejudice as a result. He concludes that May 16 should be the starting date for his FMLA leave.

The application Mr. Patrick submitted in support of his request for FMLA leave included his doctor's statements that

> (i) Mr. Patrick's qualifying medical condition commenced April 18, 2013 and was expected to last weeks;

> (ii) Mr. Patrick had been treated for the condition on April 18, April 22, and May 9; and

> (iii) the beginning and ending dates for Mr. Patrick's period of incapacity were April 18 until "unknown;"

The conclusion of Mr. Patrick's employer that the qualifying medical condition that formed the basis for his FMLA leave began on April 18 didn't constitute "backdating" his request; Mr. Patrick's physician certified that Mr. Patrick's qualifying medical condition and associated treatment began on April 18. Mr. Patrick hasn't alleged or argued that he had some other qualifying condition that began on May 16; he says the start of his FMLA leave time should have started on May 16 because that's when he submitted his paperwork. The court can't agree.

The court finds the Sewall decision persuasive and agrees with that court that "[a]n employee is entitled to FMLA leave at the outset of a 'serious medical condition." Sewall v. Chicago Transit Authority, 2001 WL 40802, at *5. According to Dr. Holm, Mr. Patrick's treating physician, Mr. Patrick's serious medical

condition – an acute reaction to stress/anxiety – that caused him to be unfit to work began on April 18, 2013. "There is absolutely no law supporting a finding that [Mr. Patrick's] leave should have begun, almost a full month after [April 18], on [May 16] . . . when [he] actually completed the FMLA application, [four] weeks into his sick leave." 2005 WL 40802, at *5. *See* Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81 (2002) (Court invalidated 29 C.F.R. § 825.700(a), which required an employer to notify the employee of the FMLA designation in order for the leave to begin to count against the FMLA 12-week entitlement); Haas v. Zurich North America, No. 05 C 1421, 2006 WL 2849699, at *7 (N.D. Ill. Sept, 29, 2006) ("The FMLA does not grant employees the right to unilaterally extend the period of protected leave."); Myrick v. Aramark Corp., No. 02 C 5890, 2004 WL 906176, at *9 (N.D. Ill. Apr. 28, 2004) (rejecting plaintiff's claim that because her FMLA leave wasn't officially approved until July 10, she was entitled to leave beginning that date, rather than on April 23, when she actually began her leave: "Allowing Myrick to delay the start of her 12 week FMLA leave merely by dragging her feet on the completion of her certification forms is an entirely nonsensical result."); and Strykowski v. Rush North Shore Med. Ctr., No. 02 C 778, 2003 WL 21788987, at *6 (N.D. Ill. July 30, 2003) ("The extension [plaintiff] asks for today would both undermine and contravene [the] purposes [of FMLA] by allowing him to leave work for medical reasons for nearly 28 weeks and still be afforded protection under the FMLA as if he had only taken the 12 week statutory required period."). The court finds those holdings persuasive and applicable to the facts of this case.

The holdings of the cases cited in the preceding paragraph, together with the facts of this case and the information supplied by Mr. Patrick's physician in his FMLA application, support a finding that April 18 was the date Mr. Patrick's qualifying condition commenced and the date his FMLA leave began. "Allowing [Mr. Patrick] to delay the start of [his] 12 week FMLA leave merely by dragging [his] feet on the completion of [his FMLA] forms is an entirely nonsensical result." Myrick v. Aramark Corp., No. 02 C 5890, 2004 WL 906176, at *9 (N.D. Ill. Apr. 28, 2004). *Cf.* 29 C.F.R. § 825.302 (effective date of FMLA leave for employees giving advance notice of need for FMLA leave is the date of the reported event (surgery, birth, treatment), not the date the FMLA request is made or application submitted).

But that isn't enough for the defendants to be entitled to summary judgment. While there's no genuine issue on the starting date of Mr. Patrick's leave, there is a fact issue about whether Mr. Patrick would have been terminated (or deemed to have resigned) for not coming back to work if the defendants had responded to Mr. Patrick's letter indicating disagreement over the date his leave would end. If the defendants' undisputed failure to respond to Mr. Patrick's letter questioning the end date of his FMLA leave caused Mr. Patrick to not return to work when the defendants thought he should, producing either an implicit resignation or termination, a reasonable jury could find that the defendants interfered with Mr. Patrick's FMLA rights. 29 C.F.R. § 825.301(e).

The parties also disagree about the validity of Merit Rule 8-8, which equates a failure to return to work to a voluntary resignation. More will be said about this dispute in the context of the due process arguments, but for purposes of the FMLA interference claim, it doesn't matter whether the defendants fired Mr. Patrick for not coming to work or considered him to have resigned by virtue of his not coming to work. If the defendants' failure to communicate with Mr. Patrick after his letter disclosed a disagreement about when the FMLA leave would end was why Mr. Patrick didn't show up for work – a finding a reasonable juror could make on this record – whether he formally quit or was fired doesn't matter.

The defendants aren't entitled to summary judgment on either the FMLA retaliation claim or the FMLA interference claim. The court turns to Mr. Patrick's other claims, on which the defendants are entitled to judgment as a matter of law.

### *Substantive Due Process*

Counts 1 and 2 of Mr. Patrick's second amended complaint contain his broadly stated allegations that his substantive due process rights were violated. At the hearing, counsel indicated that those claims relate to Mr. Patrick's protected property interest in his job, an interest for which he has more than an abstract need. Even construing the facts of this case in the light most favorable to Mr. Patrick, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986), Mr. Patrick can't prevail on his substantive due process claims for a number of reasons.

"[T]he scope of substantive due process is very limited." <u>Belcher v. Norton</u>, 497 F.3d 742, 753 (7th Cir. 2007). Substantive due process claims are "limited to violations of fundamental rights, and employment-related rights are not actionable as a violation of substantive due process unless the employee also alleges the defendants violated some other constitutional right or that state remedies were inadequate." <u>Palka v. Shelton</u>, 623 F.3d 447, 453 (7th Cir. 2010) (citations omitted). "It is one thing to say that officials acted badly, even tortiously, but – and this is the essential point – it is quite another to say that their actions rise to the level of a constitutional violation." <u>Tun v. Whitticker</u>, 398 F.3d 899, 902 (7th Cir. 2005). Mr. Patrick hasn't alleged that another constitutional violation or that state law remedies were inadequate.[3]

Too, when a plaintiff claims a government entity or official has violated his substantive due process rights, the court "must ask whether the government has abused its power in a way that 'shocks the conscience.'" <u>Bratton v. Town of Fortville</u>, No. 1:09-cv-1391, 2010 WL 2291853, at *3 (S.D. Ind. June 2, 2010); *see also* <u>Belcher v. Norton</u>, 497 F.3d 742, 753 (7th Cir. 2007) ("Where the exercise of government authority involves law enforcement officials, the Supreme Court has stated that a plaintiff's substantive due process rights are violated where the alleged abuse of government power 'shocks the conscience.'"). "Under this

---

[3] Although Mr. Patrick entitles subsection c of his response brief "Mr. Patrick's post-deprivation remedies were inadequate," Resp., at 16, his procedural due process/breach of contract claim in Counts 1-3 is that the defendants didn't follow the applicable statutory procedures, not that those remedies were inadequate.

standard, abuse that is merely tortious or even 'abhorrent' does not offend substantive due process." <u>Viehweg v. City of Mount Olive</u>, 559 Fed. App'x 550, 552 (7th Cir. 2014). Mr. Patrick hasn't pointed to evidence demonstrating that any of the defendants' actions "shocked the conscience."

Lastly, "[a]s the Supreme Court pointed out in <u>Washington v. Glucksberg</u>, 521 U.S. 702 (1997), 'the [Due Process] Clause . . . provides heightened protection against government interference with certain fundamental rights and liberty interests.' <u>Id.</u> at 720. The list of such rights and interests is, however, a short one, including things like the right to marry, the right to have children, the right to marital privacy, the right to contraception, and the right to bodily integrity. <u>Id.</u> Conspicuously missing on this list is the right to follow any particular career." <u>Sung Park v. Indiana Univ. Sch. of Dentistry</u>, 692 F.3d 828, 832 (7th Cir. 2012). "Here, the fundamental right at issue is [Mr. Patrick's] claimed property right in continued employment. Employment rights, however, are state-created rights, and a public employee's interest in continued employment does not rise to the level of a 'fundamental' right protected by substantive due process." <u>Palka v. Cook County</u>, No. 07 C 5432, 2008 WL 5263436, at *8 (N.D. Ill. Dec. 17, 2008).

The defendants are entitled to summary judgment on the substantive due process claims in Counts 1 and 2.

*14th Amendment Procedural Due Process*

Mr. Patrick claims his procedural due process rights under the Fourteenth Amendment were violated when the defendants terminated his employment without filing formal disciplinary charges, providing him with notice of those charges, and conducting a disciplinary hearing (Count 1). Mr. Patrick asserts that the Merit Board terminated his employment in violation of his statutory and constitutional protections.

The Fourteenth Amendment to the United States Constitution prohibits a state from depriving a person of life, liberty, or property without due process of law. American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999). "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.' Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process." 526 U.S. at 59 (internal citations omitted); *see also* Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985) ("[T]he Due Process Clause provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedures.").

*Property Interest*

To have a constitutionally protected property interest in a benefit, such as a job, a person must have more than an abstract need, desire, or unilateral expectation of it; he must have "a legitimate claim of entitlement to it." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). The Constitution doesn't create property interests; property interests that entitle the owner to due

26

process protections generally arise from a statute, ordinance, or contract. 408 U.S. at 577.

Mr. Patrick had no written employment contract, and the defendants claim entitlement to judgment based on that fact alone. The defendants are mistaken. Even though the parties had no written contract or collective bargaining agreement, a "legitimate claim of entitlement by Sheriff's deputies to their jobs" has been recognized under Indiana Code § 36-8-10-11(a). Marion County Sheriff's Merit Bd. v. Peoples Broadcasting Corp., 547 N.E.2d 235, 239 (Ind. 1989); *see also* McCorkle v. Henry County, No. 1:04-CV-1942, 2006 WL 1547082, at *4 (S.D. Ind. June 1, 2006) ("The Indiana Supreme Court has held that the Merit Board statute, Ind. Code § 36-8-10-11(a), creates a legitimate claim of entitlement by the Sheriff's deputies to their jobs, such that constitutional due process protections apply when a deputy may lose his or her job.") (*citing* Marion County Sheriff's Merit Bd. v. Peoples Broadcasting Corp., 547 N.E.2d 235, 239 (Ind. 1989)). Mr. Patrick was deprived of his job – a property interest – so the first prong of the analysis is satisfied.

*Available Procedures*

Because Mr. Patrick had a protected property interest in his job, the inquiry turns to whether a reasonable factfinder could find that the available procedures didn't comport with due process. *See* Zinermon v. Burch, 494 U.S. 113, 126 (1990) ("[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was

constitutionally adequate."). In Indiana, the processes governing employment actions taken against non-probationary Sheriff's deputies are found in Indiana Code § 36-8-10-11. The relevant sections of the statute read as follows:

> (a) The sheriff may dismiss, demote, or temporarily suspend a county police officer for cause after preferring charges in writing and after a fair public hearing before the [Merit] board, which is reviewable in the circuit court. Written notice of the charges and hearing must be delivered by certified mail to the officer to be disciplined at least fourteen (14) days before the date set for the hearing. The officer may be represented by counsel. The board shall make specific findings of fact in writing to support its decision.
>
> *   *   *
>
> (e) An appeal under subsection (a) must be taken by filing in court, within thirty (30) days after the date of the decision is rendered, a verified complaint stating in a concise manner the general nature of the charges against the officer, the decision of the board, and a demand for the relief asserted by the officer. . . . The county must be named as the sole defendant [and] [n]either the board nor the members of it may be made parties defendant to the complaint . . . .

IND. CODE § 36-8-10-11(a), (e).

Mr. Patrick hasn't challenged those statutory procedures as insufficient or violative of due process. Instead, Mr. Patrick maintains the defendants wrongfully failed to follow those procedures. "Although he has been deprived of property under color of state law, the deprivation did not occur as a result of some established state procedure. Indeed, the deprivation occurred as a result of the unauthorized failure of agents of the State to follow established state procedure." Parratt v. Taylor, 451 U.S. 527, 543 (1981). Even if the established procedures wouldn't have provided Mr. Patrick with all the relief he sought, "that does not mean that the state remedies are not adequate to satisfy the requirements of due

process." <u>Parratt v. Taylor</u>, 451 U.S. at 544. "[A] state cannot be held to have violated due process requirements if it has made procedural protection available." <u>Hudson v. City of Chicago</u>, No. 02 C 1129, 2003 WL 21230835, at * 10 (N.D. Ill. May 28, 2003).

Mr. Patrick hasn't argued or pointed to evidence supporting the proposition that the procedures provided by Indiana law are inadequate, so he can't prevail on his claim in Count 1 that the defendants violated his Fourteenth Amendment procedural due process rights. *See* <u>Veterans Legal Defense Fund v. Schwartz</u>, 330 F.3d 937, 941 (7th Cir. 2003) ("Given the availability of state remedies that have not been shown to be inadequate, plaintiffs have no procedural due process claim.").

### *State Law Due Process and Breach of Contract*

Mr. Patrick claims the defendants' actions – not filing formal disciplinary charges, not providing him with notice of those charges, and not holding a disciplinary hearing – violated the requirements of Indiana Code § 36-8-10 *et seq.* (Count 2) and constituted a breach of contract (Count 3). To prevail on either claim, Mr. Patrick must establish that he had a constitutionally protected property interest, he was deprived of that interest, and the deprivation occurred without due process of law. <u>McCorkle v. Henry County</u>, No. 1:04-CV-1942, 2006 WL 1547082, at *4 (S.D. Ind. June 1, 2006). As just discussed, Mr. Patrick can establish the first two elements – he had a protected property interest in his job

and he was deprived of that interest – leaving for resolution the issue of whether the loss of his position with the Starke County Sheriff's Department occurred without due process of law.

"In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process." Brokaw v. Mercer County, 235 F.3d 1000, 1020 (7th Cir. 2000). The fundamental requirement of procedural due process is "the opportunity to be heard . . . at a meaningful time and in a meaningful manner." Goldberg v. Kelly, 397 U.S. 254, 267 (1970).

The statute governing the due process procedures at issue in this case, Indiana Code § 36-8-10-11, provides that a sheriff "may dismiss . . . a county police officer for cause after preferring charges in writing and after a fair public hearing before the [Merit] board, which is reviewable in the circuit court. Written notice of the charges and hearing must be delivered by certified mail to the officer to be disciplined at least fourteen (14) days before the date set for the hearing. The officer may be represented by counsel. The board shall make specific findings of fact in writing to support its decision." IND. CODE § 36-8-10-11(a). Mr. Patrick claims he was deprived of due process procedures in the pre- and post-termination of his employment.

*Employment Decision*

To begin, Mr. Patrick challenges the defendants' reliance on Starke County Sheriff's Merit Board Rule 8-8 as a basis for their employment decision because, Mr. Patrick says, Rule 8-8 itself violates due process. The defendants disagree and argue that the authority cited by Mr. Patrick is inapplicable to the rule at issue in this case.

Rule 8-8, entitled "Absence Without Leave," provides that

> Absence from duty without leave, failure to report for duty after the leave has expired, or when such leave has been disapproved, revoked, or canceled by the Sheriff and Merit Board, shall be deemed as a resignation. An employee so charged may show to the satisfaction of the Sheriff and Merit Board that such absence or failure to report was excusable. The Merit Board may then recommend to the Sheriff that the officer be reinstated.

Mr. Patrick first claims the defendants' reliance on Rule 8-8 is misplaced because, he says, that "'resignation' provision is applicable to leaves of absence, not FMLA leave." Mr. Patrick's claim is found in a single sentence in his response brief, unaccompanied by further argument or support, so his claim that Rule 8-8 isn't applicable to FMLA leave is waived. *See* Bass v. Joliet Public School Dist. No. 86, 746 F.3d 835, 841 n.1 (7th Cir. 2014) ("Without any further analysis or citation to authority, we find this argument waived."); Judge v. Quinn, 612 F.3d 537, 557 (7th Cir. 2010) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

Mr. Patrick also claims the termination of his employment under Rule 8-8 constitutes a due process violation. In support, he cites Brinson v. Sheriff's Merit Board of Jefferson County, 395 N.E.2d 267 (Ind. Ct. App. 1979), which involved

a challenge to an employment action based on a Jefferson County Police Merit Board "resignation" rule. Due process was a key issue in Brinson, as it is here, but the text of the Jefferson County rule in Brinson[4] is materially different from the text of the Starke County rule at issue in this case. The Brinson court found that Jefferson County's "automatic resignation" rule made no reference to any due process protections, and so violated the applicable Indiana statute, as well as the rules and regulations of the Jefferson County Police Department, "insofar as they provide that there shall be no discharge without a prior hearing." 395 N.E.2d at 272. In contrast, Starke County Sheriff's Rule 8-8 provides that an employee found to be absent without leave "may show to the satisfaction of the Sheriff and Merit Board that such absence or failure to report was excusable," and the Merit Board "may then recommend to the Sheriff that the officer be reinstated." Although the Starke County "resignation" rule makes no reference to a hearing, it includes procedures that may constitute due process protections. Given the differing texts of the two rules and the differing facts and circumstances of the two cases, the Brinson decision doesn't lead to a conclusion that Starke County Sheriff's Rule 8-8 constitutes a *per se* violation of due process or Indiana law.

*Pre-deprivation process*

---

[4] The Jefferson County rule provided that an officer returning after a leave of absence must furnish "evidence of mental and physical competence and other requirements" to the Sheriff within 30 days of the officer's return to active duty, and "[f]ailure to furnish such evidence within 30 days after reporting back for duty shall constitute the resignation of such candidate automatically at 12:01 a.m. on the first day following such 30 day period." 395 N.E.2d at 269.

Mr. Patrick claims he was deprived of his due process rights in the pre-deprivation process. Citing <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 542 (1985), the defendants maintain that because Mr. Patrick resigned from his position with the Sheriff's Department, he was entitled to minimal due process: an oral or written notice of the charges, an explanation of the evidence against him, and a chance to present his side of the story. The defendants say appropriate pre-deprivation process was given – Mr. Patrick received a letter dated July 16 explaining that he was considered to have resigned his position with the Sheriff's Department when he hadn't returned to work on or before July 11; Mr. Patrick was able to present his side of the story – he sent a letter to the Sheriff saying that even though his FMLA leave "may have expired on July 11, 2013," he planned to return to work and was waiting to be released by his doctor; and Mr. Patrick wrote to the Merit Board on July 16 reporting that he had spoken to FOP legal defense attorneys and was requesting a hearing before the Merit Board to address his employment situation. The defendants conclude that because Mr. Patrick had notice of the defendants' position, an explanation of the reasoning, and a chance to tell his side of the story, he received sufficient pre-deprivation process.

Mr. Patrick argues that he was denied all pre-deprivation remedies. He says he was taken off the county payroll on July 16 without having received any prior notice of the charges and evidence against him or an opportunity to be heard. He says that being terminated via letter from the Sheriff, without a face-to-face meeting, is the "antithesis of providing even the 'root requirement' of the due

process clause." Mr. Patrick maintains the Sheriff and/or the Merit Board should have provided him with the pre-termination rights outlined in Indiana Code § 36-8-10-11(a).

Mr. Patrick alleges that his job loss resulted from Sheriff Cowen's failure to follow the procedures outlined in the statute; he hasn't alleged that his job loss occurred through the failure of an established procedure. The actions he complains of were "random and unauthorized departures from the applicable procedures regarding [termination] hearings," and process was "due" after the deprivation occurred. Williams v. Pollard, No. 14-CV-148, 2015 WL 5521876, at *2 (E.D. Wis. Sept. 18, 2015). "Because the state could not predict defendants' failure to follow the [statutory procedures], a pre-deprivation hearing would serve no purpose. 2015 WL 5521876, at *2; see also Germano v. Winnebago County, No. 01 C 50033, 2004 WL 1498148, at *2 (N.D. Ill. July 2, 2004) ("[H]ere, the state could not have predicted defendant would violate the statute nor prevented the violation through any additional procedures."). Because post-deprivation processes were in place for Mr. Patrick to pursue his claim that he hadn't been afforded sufficient process and/or that his employment was terminated in error, he hasn't come forth with evidence sufficient to establish a violation of his pre-deprivation due process rights. See Veterans Legal Defense Fund v. Schwartz, 330 F.3d 937, 939-940 (7th Cir. 2003) ("For some deprivations due process includes a predeprivation hearing, but post-deprivation remedies are a constitutionally acceptable substitute for predeprivation remedies in many procedural due process

cases." (internal quotation and citation omitted)); <u>Lolling v. Patterson</u>, 966 F.2d 230, 234 (7th Cir. 1992) ("[D]eprivations of property which occur without a predeprivation hearing do not violate due process so long as the state provides a meaningful postdeprivation remedy."); <u>Williams v. Pollard</u>, No. 14-CV-148, 2015 WL 5521876, at *3 (E.D. Wis. Sept. 18, 2015) ("[P]laintiff's procedural due process claim fails because defendants were required to follow the procedures set forth in the Wisconsin Administrative Code and failed to do so and because adequate post-deprivation proceedings exist to remedy any wrongful deprivation of liberty.").

<i>Post-deprivation process</i>

Mr. Patrick contends he was deprived of his due process rights in the post-deprivation process, as well. The defendants respond that the Merit Board afforded Mr. Patrick a post-deprivation hearing that would have cured any deficiency in the pre-deprivation process, but Mr. Patrick chose not participate in the March 11, 2014 hearing and withdrew his request for reinstatement and back pay. Had Mr. Patrick attended the Merit Board hearing, the defendants say, he could have appealed any unfavorable decision to the circuit court in accordance with Indiana Code § 36-8-10-11(e), the statute upon which he relies.

"Under Indiana law, a claimant with an available administrative remedy must pursue that remedy before being allowed access to the courts. If a party fails to exhaust administrative remedies, the trial court lacks subject matter jurisdiction. . . . Indiana Code § 36-8-10-11 governs the administrative process for disciplinary actions taken against non-probationary county policy officers." <u>Lake</u>

County Sheriff's Corrections Merit Bd. v. Peron, 756 N.E.2d 1025, 1028 (Ind. Ct. App. 2001). Thus, "even if Mr. [Patrick] had a legitimate entitlement to continued employment under I.C. § 36-8-10-11(a), he could not bring this claim in federal court because he did not exhaust his state remedies." Robert v. Carter, 819 F. Supp. 2d 832, 850 (S.D. Ind. 2011). The parties don't dispute that Mr. Patrick didn't actually exhaust his administrative remedies, but Mr. Patrick maintains his failure to exhaust should be excused because he lacked "*meaningful* access to review procedures" and appearing before the Merit Board "would have been futile." Resp., at 18 (emphasis in original).

Courts must "start with the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts. This rule, however, is not absolute. . . . [I]ndividual interests demand that exhaustion be excused when

> '(1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.'

Gonzalez v. O'Connell, 355 F.3d 1010, 1016 (7th Cir. 2004) (*quoting* Iddir v. INS, 301 F.3d 492, 498 (7th Cir. 2002)). The exhaustion requirement also can be relaxed if "administrative remedies [have] been exhausted on the same or closely related issues." City of East Chicago v. Copeland, 839 N.E.2d 737, 744 (Ind. Ct. App. 2005). Mr. Patrick claims he should be excused from the exhaustion

requirement because the notice he received was untimely and inadequate and his attendance at the Merit Board meeting would have been futile.

*Timing of Notice*

Mr. Patrick first complains he didn't get notice of the Merit Board hearing at least 14 days before the hearing as Indiana Code § 36-8-10-11(a) requires; he and his counsel received notice only 34.5 hours before the hearing, and the notice they received didn't specifically set forth the scope of the hearing. Late receipt of a notice of a hearing, however, isn't one of the circumstances that might justify excusing the exhaustion requirement.

When notice of a merit board hearing was provided only two days before the scheduled hearing, the court concluded that "[w]hile the notice does appear to be inadequate, [the officers] should have pursued the available administrative remedy before seeking judicial intervention." <u>Lake County Sheriff's Corrections Merit Bd. v. Peron</u>, 756 N.E.2d 1025, 1028 (Ind. Ct. App. 2001). That conclusion applies equally to Mr. Patrick's situation. Mr. Patrick and his counsel were notified of the time and date for the hearing, and while that notice may have been tardy and/or inadequate, Mr. Patrick had an opportunity to pursue the administrative remedies made available to him.

Mr. Patrick hasn't argued or pointed to evidence that could support a finding that he was prejudiced by the lateness of the notice, so the timing of the notice under these circumstances doesn't excuse the requirement that he exhaust his administrative remedies.

*Futility*

Mr. Patrick claims that attending the merit board hearing would have been futile because his attorney believed, based on counsel's conversation with Merit Board president Edward Troike, that the board would have denied Mr. Patrick's request for reinstatement and back pay regardless of any argument he might make. Mr. Patrick insists that the hearing would have been a "sham or an empty formality."

The parties don't dispute that Mr. Patrick's counsel, Andrew Duncan, and board president Edward Troike spoke before the scheduled board hearing, but they disagree on what was said. The parties have submitted differing versions of the pre-hearing conversation.

Mr. Patrick's response brief contains his counsel's version of his telephone conversation with Mr. Troike. According to Mr. Duncan, "Mr. Troike indicated that the decision to terminate Mr. Patrick's employment would not be reversed no matter what evidence was presented or what arguments were made to the Board. In response to a question from [Mr. Duncan] regarding whether it would be a waste of time for he and Mr. Patrick [to] travel to Starke County for the hearing, President Troike responded, 'Yes, it would.'" Mr. Duncan says he believed Mr. Troike was "the spokesperson for the Merit Board," so "Mr. Patrick knew appearing before the Board to dispute his termination would be futile and therefore he declined to appear and participate in a hearing wherein the result was pre-determined."

The defendants have submitted Mr. Troike's deposition testimony as an exhibit to their brief. Mr. Troike said Mr. Duncan called him before the hearing asking about how the board would be ruling on Mr. Patrick's request for reinstatement and indicating that the board "needed to rule in [Mr. Patrick's] favor." Mr. Troike said he told Mr. Duncan he didn't know if the board would rule "because we still understand as a Merit Board that it's a county issue not a merit issue, and we would be having the hearing, perhaps making a statement [about] whether we think he should be, Mr. Patrick should be reinstated or not, and we may not make a decision that evening, and at that time, if I remember right, [Mr. Duncan] said, 'Then we won't have a hearing,' or '[we] won't show up.'"

Regardless of who said what, the record contains no support for plaintiff's counsel belief that as "spokesperson" for the Merit Board, Mr. Troike was the sole decision-maker. As Mr. Troike noted at his deposition, he's only one member of a five-person board, and Mr. Patrick hasn't alleged that he or his counsel talked to any of the other four board members to get their opinions of what might or might not happen at the board meeting.

"To prevail upon a claim of futility, one must show that the administrative agency was powerless to effect a remedy or that it would have been impossible or fruitless and of no value under the circumstances." M-Plan, Inc. v. Indiana Comprehensive Health Ins. Ass'n, 809 N.E.2d 834, 840 (Ind. 2004). Mr. Patrick hasn't addressed those considerations; he merely complains that he believed the board would rule against him. "[T]he mere fact that an administrative agency

might refuse to provide the relief requested does not amount to futility." <u>Johnson v. Celebration Fireworks, Inc.</u>, 829 N.E.2d 979, 984 (Ind. 2005).

A merit board hearing was scheduled to provide Mr. Patrick an opportunity to address his employment issue, and Mr. Patrick made the choice to not attend. The defendants can't be held to have violated Mr. Patrick's due process rights when they made procedural protections available and he didn't take advantage of those procedures. *See* <u>Palka v. Shelton</u>, 623 F.3d 447, 453 (7th Cir. 2010) ("The Merit Board's disciplinary process satisfies the County's procedural due-process obligations, and the County and its officials cannot be held liable when an employee chooses not to avail himself of its protections."); <u>Dusanek v. Hannon</u>, 677 F.2d 538, 543 (7th Cir. 1982) ("[A] state cannot be held to have violated due process requirements when it has made procedural protection[s] available and the plaintiff has simply refused to avail himself of them."). Even if Mr. Patrick had been unsuccessful at the merit board hearing, he still had the option of pursuing an appeal to the Starke County Circuit Court. *See* <u>Johnson v. Celebration Fireworks, Inc.</u>, 829 N.E.2d at 984 ("[R]esort to the [merit board] may [have] produce[d] a reasoned explanation of the considerations going into the [Sheriff's] position. That in itself would be of value before resort to the courts to resolve such an issue.").

This record wouldn't allow a reasonable trier of fact to find a violation of Mr. Patrick's due process rights under the laws of the State of Indiana, that the defendants' actions amounted to a breach of contract, or that Mr. Patrick should

be excused from pursuing his administrative remedies under Indiana Code § 36-8-10-11. The defendants are entitled to summary judgment on violation of state law claims in Counts 2 and his breach of contract claim in Count 3.

Because Mr. Patrick hasn't established that the defendants violated a constitutional right, consideration of the defendants' qualified immunity defense is unnecessary.

### *Conclusion*

The court DENIES the defendants' motion for summary judgment [docket # 50] with respect to the plaintiff's FMLA interference and FMLA retaliation claims against the Starke County Sheriff's Department and Sheriff Oscar Cowen and GRANTS the motion as to all other claims.

A status conference will be scheduled following consultation with counsel to reset the trial date.

SO ORDERED.

ENTERED:   April 13, 2016


    /s/ Robert L. Miller, Jr.
Robert L. Miller, Jr., Judge
United States District Court